Slip Op. 21-128

## UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| QINGDAO SENTURY TIRE CO., LTD., SENTURY TIRE USA INC., SENTURY (HONG KONG) TRADING CO., LIMITED,<br><br>    Plaintiffs,<br><br>and<br><br>PIRELLI TYRE CO., LTD., PIRELLI TYRE S.P.A., and PIRELLI TIRE LLC,<br><br>    Consolidated Plaintiffs,<br><br>v.<br><br>UNITED STATES,<br><br>    Defendant. | Before:  Jennifer Choe-Groves, Judge<br><br>Consol. Court No. 18-00079 |

## OPINION AND ORDER

[Remanding in part and sustaining in part the second remand results from the U.S. Department of Commerce in the antidumping duty administrative review of certain passenger vehicle and light truck tires from the People's Republic of China.]

Dated:  September 24, 2021

Ned H. Marshak and Jordan C. Kahn, Grunfeld Desiderio Lebowitz, Silverman & Klestadt, LLP, of New York, N.Y. and Washington, D.C., for Plaintiffs Qingdao Sentury Tire Co., Ltd., Sentury Tire USA Inc., and Sentury (Hong Kong) Trading Co., Limited.

Consol. Court No. 18-00079                                                        Page 2

Daniel L. Porter, James P. Durling, Ana M. Amador, and James C. Beaty, Curtis,
Mallet-Prevost, Colt & Mosle LLP, of Washington, D.C., for Consolidated
Plaintiffs Pirelli Tyre Co., Ltd., Pirelli Tyre S.p.A., and Pirelli Tire LLC.

Ashley Akers, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S.
Department of Justice, of Washington, D.C., for Defendant United States.  With
her on the brief were Brian M. Boynton, Acting Assistant Attorney General,
Jeanne E. Davidson, Director, and Patricia M. McCarthy, Assistant Director.  Of
counsel on the brief was Ayat Mujais, Office of the Chief Counsel for Trade
Enforcement and Compliance, U.S. Department of Commerce.

      Choe-Groves, Judge:  This action arises from the administrative review by

the U.S. Department of Commerce ("Commerce") of certain passenger vehicle and

light truck tires from the People's Republic of China ("China").  Certain Passenger

Vehicle and Light Truck Tires from the People's Republic of China ("Final

Results"), 83 Fed. Reg. 11,690 (Dep't of Commerce Mar. 16, 2018) (final results

of antidumping duty admin. review and final determination of no shipments; 2015–

2016); see also Certain Passenger Vehicle and Light Truck Tires from People's

Republic of China: Issues and Decision Mem. Final Results 2015–2016

Antidumping Duty Admin. Review, ECF No. 15-5 ("Final IDM"); Decision Mem.

Prelim. Results Antidumping Duty Admin. Review: Certain Passenger Vehicle and

Light Truck Tires from People's Republic of China (Aug. 31, 2017), PR 420.[1]

---

[1] Citations to the administrative record reflect the public record ("PR") document
numbers filed in the Joint Appendix (Public Version), ECF No. 48, in Shandong
Yongtai Group Co. v. United States, (formerly consolidated) Court No. 18-00077.

Consol. Court No. 18-00079                                                    Page 3

Before the Court are the <u>Final Results of Redetermination Pursuant to Court

Order</u>, ECF No. 21-1 ("<u>Second Remand Results</u>"), which the Court ordered in

<u>Shandong Yongtai Group Co. v. United States</u> ("<u>Shandong Yongtai II</u>"), 44 CIT

__, 487 F. Supp. 3d 1335 (2020).  After the Court issued <u>Shandong Yongtai II</u>, the

Court severed the lead case, <u>Shandong Yongtai Group Co. v. United States</u>,

(formerly consolidated) Court No. 18-00077, from the consolidated action and

reconsolidated the member cases with <u>Qingdao Sentury Co., Ltd. v. United States</u>,

Consol. Court No. 18-00079, as the new lead case.  <u>Shandong Yongtai Group Co.

v. United States</u> ("<u>Shandong Severance</u>"), 45 CIT __, __, 493 F. Supp. 3d 1342,

1345 (2021).

Plaintiffs Qingdao Sentury Tire Co., Sentury (Hong Kong) Trading Co., and

Sentury Tire USA Inc. (collectively, "Sentury") filed comments in support of the

<u>Second Remand Results</u>.  Sentury's Comments Supp. Second Remand Results,

ECF No. 24 ("Sentury's Cmts.").  Consolidated Plaintiffs Pirelli Tyre Co., Pirelli

Tire LLC, and Pirelli Tyre S.p.A. (collectively, "Pirelli") filed comments on the

<u>Second Remand Results</u>.  Comments Consol. Pls. Pirelli Tyre Commerce's Second

Redetermination on Remand, ECF No. 23 ("Pirelli's Cmts.").  Defendant United

States ("Defendant") filed a response to all comments on the <u>Second Remand

Results</u>.  Def.'s Resp. Comments Remand Redetermination, ECF No. 25 ("Def.'s

Cmts.").

For the following reasons, the Court remands in part and sustains in part the

Second Remand Results.

## ISSUES PRESENTED

This case presents the following issues:

1.    Whether Commerce's denial of Pirelli's separate rate status for the

      period of review from January 27, 2015 to October 19, 2015 is

      supported by substantial evidence; and

2.    Whether Commerce's revised dumping margin assigned to Sentury is

      in accordance with the law.

## BACKGROUND

The Court assumes familiarity with the underlying facts and procedural

history of this case and recites the facts relevant to the Court's review of the

Second Remand Results.  See Shandong Yongtai II, 44 CIT at __, 487 F. Supp. 3d

at 1340–47; Shandong Yongtai Grp. Co. v. United States, ("Shandong Yongtai I"),

43 CIT __, __, 415 F. Supp. 3d 1303, 1306–07, 1312–18 (2019); see also

Shandong Severance, 45 CIT at __, 493 F. Supp. 3d at 1342.

Pirelli applied for separate rate status in this administrative review, but

Commerce determined that Pirelli did not qualify for separate rate status because

of de facto Chinese government control through Chem China's ownership of

Pirelli.  Shandong Yongtai I, 43 CIT at __, 415 F. Supp. 3d at 1316; see also Final

IDM at 28; [Pirelli]'s Separate Rate Application (Nov. 17, 2016) ("Pirelli's SRA"),

PR 192–193.  Commerce also denied Pirelli separate rate status for the segment of

the period of review before Chem China's acquisition of Pirelli in October 2015

because Commerce asserted that Pirelli had not provided complete ownership

information as to Pirelli's intermediate and ultimate owners from January through

October 2015.  Shandong Yongtai I, 43 CIT at __, 415 F. Supp. 3d at 1317–18; see

also Final IDM at 28.  Commerce determined that Pirelli's separate rate status

claim for the period of time before Chem China's acquisition was not supported by

the record.  Shandong Yongtai I, 43 CIT at __, 415 F. Supp. 3d at 1318; see also

Final IDM at 28.  Thus, Commerce assigned Pirelli the China-wide entity rate for

the entire period of review.  Shandong Yongtai I, 43 CIT at __, 415 F. Supp. 3d at

1318.

      The Court remanded Commerce's denial of Pirelli's separate rate status for

Commerce to reconsider the criteria for de jure and de facto governmental control.

Id. at __, 415 F. Supp. 3d at 1317.  The Court did not reach the issue of Pirelli's

request for separate rate status for the period before Chem China's acquisition.  Id.

at __, 415 F. Supp. 3d at 1318.

      In the Final Results of Redetermination Pursuant to Remand, Shandong

Yongtai Group Co. v. United States, (formerly consolidated) Court No. 18-00077

("Shandong Docket"), ECF Nos. 71, 72, Commerce maintained its determination

of de facto Chinese government control and denied separate rate status to Pirelli.

See Shandong Yongtai II, 44 CIT at __, 487 F. Supp. 3d at 1344–45.  Commerce

examined the record and noted that Chinese government-owned entities had

majority ownership of Pirelli.  Id. at __, 487 F. Supp. 3d at 1345.  Commerce

determined that Pirelli failed to satisfy the third criterion of the de facto test,

whether the respondent has autonomy from the government in making decisions

regarding the selection of management.  Id. at __, 487 F. Supp. 3d at 1345–46.

The Court sustained Commerce's determination denying separate rate status to

Pirelli.  Id. at __, 487 F. Supp. 3d at 1346.  On second remand, Commerce did not

address Pirelli's separate rate status before Chem China's acquisition, nor did

Pirelli comment on Commerce's draft remand results.  Second Remand Results at

2–3.

       Commerce selected Sentury for individual examination as a mandatory

respondent.  See Final IDM App. I at 1.  As to Sentury's export price, Commerce

reduced Sentury's export price through a two-step methodology that first

determined the irrecoverable value-added tax ("VAT") on subject merchandise and

then reduced the export price by the VAT determined.  Shandong Yongtai I, 43

CIT at __, 415 F. Supp. 3d at 1313.  The Court remanded the Final Results for

Commerce to explain how irrecoverable VAT was properly the subject of a

downward adjustment to Sentury's export price and for Commerce to explain the

methodology for calculating irrecoverable VAT under 19 U.S.C. § 1677a(c)(2)(B).

Id. at __, 415 F. Supp. 3d at 1314.

Commerce used the same methodology on remand and explained that

Sentury's irrecoverable VAT was an "other charge imposed" by China pursuant to

19 U.S.C. § 1677a(c)(2)(B).  Shandong Yongtai II, 44 CIT at __, 487 F. Supp. 3d

at 1340.  The Court held that because the statutory language in 19 U.S.C.

§ 1677a(c)(2)(B) did not cover the type of internal domestic tax that Commerce

alleged was irrecoverable VAT, Commerce's downward adjustment to Sentury's

export price was not in accordance with the law and Commerce's irrecoverable

VAT calculation was not supported by substantial evidence.  Id. at __, 487 F.

Supp. 3d at 1343–44.  The Court remanded for Commerce to eliminate the

adjustments made for Sentury's irrecoverable VAT and to recalculate Sentury's

export price.  Id.  On second remand, Commerce recalculated Sentury's export

price and excluded any downward adjustment for irrecoverable VAT.  Second

Remand Results at 4, 8.  Commerce assigned a dumping margin of 1.27% for

Sentury and the all-others separate rate of 1.45% for separate rate respondents.  Id.

at 8.

## JURISDICTION AND STANDARD OF REVIEW

The Court has jurisdiction pursuant to 28 U.S.C. § 1581(c) and 19 U.S.C.

§ 1516a(a)(2)(B)(iii).  The Court shall hold unlawful any determination found to be

unsupported by substantial evidence on the record or otherwise not in accordance

with the law.  19 U.S.C. § 1516a(b)(1)(B)(i).  The Court also reviews

determinations made on remand for compliance with the Court's remand order.

Ad Hoc Shrimp Trade Action Comm. v. United States, 38 CIT __, __, 992 F.

Supp. 2d 1285, 1290 (2014), aff'd, 802 F.3d 1339 (Fed. Cir. 2015).

## DISCUSSION

**I.     Commerce's Denial of Pirelli's Separate Rate Status for a Partial
         Period of Review**

The period of review in this case is from January 27, 2015 to July 31, 2016.

Final IDM at 1.  Pirelli acknowledges that the Court previously sustained

Commerce's determination to deny Pirelli separate rate status for the portion of the

period of review following Chem China's acquisition of Pirelli on October 20,

2015, but requests that the Court rule on Pirelli's alternate claim of partial separate

rate status for the first ten months of the period of review prior to Chem China's

acquisition of Pirelli.  Pirelli's Cmts. at 7–8.  Defendant urges the Court to

disregard Pirelli's argument as having "no bearing on the issues addressed on

remand" and as "irrelevant at this junction" because the Court has already

sustained Commerce's determination to deny separate rate status to Pirelli.  Def.'s

Cmts. at 5.

Commerce denied Pirelli separate rate status and determined that it was a

China-wide entity for the first ten months of the period of review because Pirelli

purportedly did not provide complete ownership information for the period of

review prior to October 20, 2015.  Final IDM at 28.  Commerce determined that

Pirelli's claim that its ownership structure prior to October 2015 was the same as

its ownership structure during the underlying investigation (when Commerce

granted it separate rate status) was not supported by the instant record.  Id.

Commerce stated that the separate rate application instructs applicants to provide

complete information on intermediate and ultimate ownership during the period of

review, and that a "mere reference to the complete ownership information which

served as the basis for granting [Pirelli] a separate rate" prior to this proceeding

was not a sufficient basis for Commerce to determine that Pirelli should receive a

separate rate for this proceeding.  Id.  Pirelli argues, to the contrary, that it did

provide documentation of corporate ownership prior to its acquisition by Chem

China, including a Sales and Purchase and Co-investment Agreement showing that

Pirelli was an Italian company prior to the Chem China acquisition in October

2015.  [Pirelli] Mot. J. Agency R. at 50, Shandong Docket, ECF Nos. 23, 24

("Pirelli's 56.2 Mot."); see also Pirelli's SRA at 50–51, Attach. G(1).

Commerce has statutory authority to determine if a country is a nonmarket

economy ("NME") pursuant to 19 U.S.C. § 1677(18).  19 U.S.C. § 1677(18); see

also Sigma Corp. v. United States, 117 F.3d 1401, 1404–06 (Fed. Cir. 1997).  In

proceedings involving an NME, such as China, Commerce employs a rebuttable

presumption that all companies within the country are subject to government

control and should be assigned a single, country-wide antidumping duty rate.  See

Sigma Corp., 117 F.3d at 1405.  An exporter will receive the country-wide rate by

default, unless it demonstrates affirmatively that the exporter maintains both de

jure and de facto independence from the government.  See id.  The burden of

rebutting the presumption of government control rests with the exporter.  See id. at

1405–06.

This case presents an unusual situation—Pirelli argues that it submitted

documentation to Commerce showing that during the first ten months of the period

of review from January 2015 to October 19, 2015, Pirelli was an Italian company

organized and existing in Italy, a market economy, with its registered offices in

Milan and listing on the Italian stock exchange.  Pirelli's 56.2 Mot. at 32–33.

Pirelli asserts that the record shows: (1) the Sales and Purchase and Co-investment

Agreement reflects that Pirelli was an "Italian publicly listed company prior to

Chem China's acquisition;" (2) Chem China's acquisition of Pirelli was finalized

on October 20, 2015; and (3) Pirelli was "de-listed from the Italian stock exchange

as part of re-structuring following Chem China's acquisition on November 6,

2015."  Id. at 50; see also Pirelli's SRA Attachs. G(1)–(3).  Pirelli argues that

evidence from the record shows that Pirelli was not a China-wide entity under

government control of an NME because it was a publicly listed Italian company

with no Chinese ownership until Chem China's acquisition on October 20, 2015.

Pirelli's 56.2 Mot. at 51.

In response, Defendant defended Commerce's denial of separate rate status

to Pirelli for the period of review from January 27, 2015 to October 19, 2015,

averring that under the rebuttable presumption of governmental control, Pirelli had

the burden of demonstrating that it was de jure and de facto independent from the

Chinese government during the period of review from January 27, 2015 to October

19, 2015.  Def.'s Mem. Opp'n Pls.' Rule 56.2 Mots. J. Agency R. at 49–50,

Shandong Docket, ECF Nos. 37, 38.  The Court disagrees.

According to Commerce's stated practice, "if Commerce determines that a

company is wholly foreign-owned or located in a market economy, then a separate

rate analysis is not necessary to determine whether it is independent from

government control."  Ad Hoc Shrimp Trade Action Comm. v. United States, 37

CIT 1085, 1091 n.23, 925 F. Supp. 2d 1315, 1320 n.23 (2013) (brackets and

internal quotation marks omitted) (quoting Certain Frozen Warmwater Shrimp

from the People's Republic of China, 76 Fed. Reg. 8338, 8340 (Dep't of

Commerce Feb. 14, 2011) (prelim. results and prelim. partial recission of fifth

antidumping duty admin. review) (unchanged in the final results)), aff'd, 802 F.3d

1339 (Fed. Cir. 2015).  In Commerce's practice, "a full separate-rate analysis is

generally considered unnecessary for wholly foreign-owned companies." Jiangsu

Jiasheng Photovoltaic Tech. Co. v. United States, 38 CIT __, __, 28 F. Supp. 3d

1317, 1344 n.128 (2014) (citing Petroleum Wax Candles from the People's

Republic of China, 72 Fed. Reg. 52,355, 52,356 & n.3 (Dep't of Commerce Sept.

13, 2007) (final results of antidumping duty admin. review)).

In this case, it appears that Commerce neglected to follow its own practice to

first determine whether Pirelli was wholly foreign-owned or located in a market

economy during the first ten months of the period of review.  Commerce set forth

its position with respect to Pirelli by stating, "[w]e continue to find that [Pirelli]

does not qualify for a separate rate for these final results.  In proceedings involving

NME countries, Commerce maintains a rebuttable presumption that all companies

within the country are subject to government control . . . ."  Final IDM at 27.  The

Court finds that it was unreasonable for Commerce to not inquire first whether

Pirelli was a wholly-owned Italian company located in a market economy (Italy)

during the first ten months of the period of review.  If Pirelli was a wholly-owned

Italian company and located in Italy prior to Chem China's acquisition, according

to Commerce's own practice, it would be unreasonable for Commerce to subject

Pirelli to a full separate rate analysis to prove its independence from Chinese

government control prior to Chem China's acquisition.  The Court holds that it was

unreasonable for Commerce: 1) to not follow its practice and determine first

whether Pirelli was wholly foreign-owned or located in a market economy prior to

the Chem China acquisition; and 2) to apply a presumption that Pirelli was a

Chinese government-controlled company in an NME country for the period from

January 2015 to October 2015 without considering first whether a separate rate

analysis was necessary, especially in light of record evidence, including the Sales

and Purchase and Co-investment Agreement, suggesting that Pirelli was a wholly

owned Italian company located in Italy.  The Court concludes that Commerce's

denial of separate rate status to Pirelli during the period of review from January

2015 to October 2015 was unreasonable and not supported by substantial evidence.

Therefore, the Court remands for Commerce to determine whether Pirelli

was wholly foreign-owned or located in a market economy prior to the Chem

China acquisition; whether a separate rate analysis should be conducted for the

period from January 2015 to October 2015; whether the presumption of Chinese

governmental control applies to Pirelli prior to Chem China's acquisition; and if

so, whether there was de jure or de facto Chinese governmental control over Pirelli

before Chem China's acquisition.  The Court reiterates that its prior holding still

stands that Commerce's determination that Pirelli was a China-wide entity for the

period from October 20, 2015 to July 31, 2016 is supported by substantial evidence

and is sustained.

## II.    Commerce's Revised Dumping Margin Assigned to Sentury

Commerce removed the downward adjustment to Sentury's export price and

revised the dumping margin for Sentury and the all-others separate rate under

respectful protest on second remand.  Second Remand Results at 4.  Sentury and

Defendant ask the Court to sustain the Second Remand Results.  Sentury's Cmts. at

1–2; Def.'s Cmts. at 4–5.

When calculating export price or constructed export price of the subject

merchandise, Commerce is directed by statute to make certain additions to, and

deductions from, the starting prices used for determining the export price or

constructed export price of the subject merchandise.  19 U.S.C. § 1677a(c), (d).

Downward tax-related adjustments to the export price are made to increase a

dumping margin and to account for an export tax, duty, or other charge imposed

on the exportation of the subject merchandise to the United States.  Id.

§ 1677a(c)(2)(B).

Commerce previously applied a downward adjustment to Sentury's export

price for "irrecoverable VAT," which the Court held was not in accordance with

the law and remanded for Commerce to remove the adjustment and recalculate the

dumping margin.  Shandong Yongtai II, 44 CIT at __, 487 F. Supp. 3d at 1344.

Commerce's removal, under protest, of the downward adjustment for irrecoverable

VAT on second remand is consistent with the Court's prior opinion and in

accordance with the law.  The Court notes that neither Sentury nor Defendant

oppose this determination or Commerce's recalculation of Sentury's dumping

margin and the separate rate for separate rate respondents.  The Court sustains

Commerce's removal under protest of the downward adjustment to Sentury's

export price, the revised dumping margin for Sentury, and the revised all-others

separate rate.

## CONCLUSION

The Court remands the issue of Pirelli's separate rate status during the

period of review from January 2015 to October 2015.  The Court sustains

Commerce's removal, under protest, of the downward adjustment to Sentury's

export price, the revised dumping margin of 1.27% for Sentury, and the revised all-

others separate rate of 1.45%.

Accordingly, it is hereby

**ORDERED** that the Second Remand Results are remanded to Commerce

for further proceedings consistent with this opinion; and it is further

**ORDERED** that this case shall proceed according to the following schedule:

(1)     Commerce shall file the third remand results on or before

November 19, 2021;

(2)     Commerce shall file the administrative record on or before

December 3, 2021;

(3)    Comments in opposition to the third remand results shall be

filed on or before January 14, 2022;

(4)    Comments in support of the third remand results shall be filed

on or before February 11, 2022; and

(5)    The joint appendix shall be filed on or before February 25,

2022.

    /s/ Jennifer Choe-Groves    
Jennifer Choe-Groves, Judge

Dated:    September 24, 2021    
        New York, New York