A-570-016<br>
Remand<br>
Slip Op. 21-128<br>
01/27/2015 – 07/31/2016<br>
**Public Version**<br>
E&C Office VII:  CD

***Qingdao Sentury Tire Co., Ltd., Sentury Tire USA Inc., Sentury (Hong Kong) Trade Co., Limited, and Pirelli Tyre Co., Ltd., Pirelli Tyre S.p.A., and Pirelli Tire LLC v. United States***
**Court No. 18-00079, Slip Op. 21-128 (September 24, 2021)**

**FINAL RESULTS OF REDETERMINATION**
**PURSUANT TO COURT ORDER**

**I.   SUMMARY**

The U.S. Department of Commerce (Commerce) has prepared these final results of redetermination pursuant to the remand order of the U.S. Court of International Trade (the Court) on September 24, 2021.[1]  This litigation pertains to the first administrative review of the antidumping duty order covering certain passenger vehicles and light truck tires (passenger tires) from the People's Republic of China (China), *Passenger Tires First Remand Redetermination*, and *Passenger Tires Second Remand Redetermination*.[2]  In *Passenger Tires Third Remand Order*, the Court ordered Commerce to reconsider the denial of Pirelli Tyre Co., Ltd., Pirelli Tyre S.p.A., and Pirelli Tire LLC's (collectively, Pirelli) separate rate status during part of the period of review (POR), *i.e.*, from January 27, 2015, through October 19, 2015.[3]

---

[1] *See Qingdao Sentury Tire Co., Ltd. v. United States*, 2021 Ct. Int'l Trade LEXIS 128 (September 24, 2021) (*Passenger Tires Third Remand Order*).
[2] *See Certain Passenger Vehicle and Light Truck Tires from the People's Republic of China:  Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2015-2016*, 83 FR 11690 (March 16, 2018), accompanying Issues and Decision Memorandum (IDM) (*Final Results*); *see also Final Results of Redetermination Pursuant to Court Remand, Shandong Yongtai Group Co., Ltd. et al. v. United States*, Court No. 18-00077, Slip Op. 19-150, dated November 27, 2019 (*Passenger Tires First Remand Redetermination*), available at https://enforcement.trade.gov/remands/19-150.pdf; and *Final Results of Redetermination Pursuant to Court Remand, Pirelli Tyre Co., Ltd., Pirelli Tyre S.p.A., and Pirelli Tire LLC v. United States*, Court No. 18-00079, Slip Op. 20-182, dated December 21, 2020 (*Passenger Tires Second Remand Redetermination*), available at https://enforcement.trade.gov/remands/20-182.pdf.
[3] *See Passenger Tires Third Remand Order* at 13.

At the direction of the Court, Commerce has reconsidered Pirelli's separate rate status for part of the POR (January 27, 2015, through October 19, 2015), and as a result, Commerce has revised its determination regarding Pirelli Tire Co.'s separate rate status with respect to this period.

## II.   REMANDED ISSUE

**Commerce's Denial of Pirelli's Separate Rate Status for a Partial Period of Review**

A.   Background

In the *Final Results*, Commerce determined that Pirelli did not qualify for a separate rate because it failed to rebut the presumption of *de facto* or *de jure* Chinese government control of its operations during the POR.[4] In addition, Commerce also denied Pirelli a separate rate for the portion of the administrative review before China National Chemical Corporation (Chem China) acquired majority indirect ownership in the company, January 2015 to October 2015.[5] Pirelli challenged this denial of a separate rate and, in *Passenger Tires First Remand Order*,[6] the Court agreed with Pirelli, stating that Commerce failed to "adequately explain how the acquisition of Pirelli S.p.A. by Chem China *in Italy* altered the ownership of Pirelli entities *in China* such that the rebuttable presumption of government ownership applies or that if the presumption applies, that evidence on the record was not sufficient to rebut the presumption."[7] Accordingly, the Court remanded to Commerce for a more fulsome discussion of the criteria for *de jure* and *de facto* government control regarding Commerce's finding that Pirelli does not qualify for a separate rate.[8] Because the Court remanded this issue to Commerce to reconsider Pirelli's

---

[4] *See Final Results* IDM at 27-28.
[5] *Id.* at 28.
[6] *See Shandong Yongtai Grp. Co., Ltd. v. United States*, 415 F. Supp. 3d 1303, 1317 (Ct. Int'l Trade November 27, 2019) (*Passenger Tires First Remand Order*).
[7] *Id*.
[8] *Id*.

separate rate status in general, the Court did not reach the issue of whether Pirelli should have been granted a separate rate during the POR before Chem China's acquisition.[9]

In the *Passenger Tires First Remand Redetermination*, Commerce continued to find that Pirelli failed to rebut the presumption of *de facto* Chinese-government control.[10] Commerce examined documents such as the articles of association (AOA), purchase agreements, board of directors meeting minutes and/or resolutions, as well as company financial statements included in the SRA to determine if any Chinese government entities had roles in Pirelli's operations.[11] Commerce determined Pirelli failed to rebut the presumption of *de facto* Chinese-government control through "[

]."[12] The Court sustained Commerce's finding on remand that Pirelli failed to rebut the presumption of government control and Commerce's assignment of the China-wide entity rate to Pirelli, but remanded Commerce's irrecoverable VAT determination.[13]

In its comments on Commerce's *Second Remand Redetermination*, which involved only Commerce's irrecoverable VAT determination, Pirelli argued that the Court had not addressed its argument concerning separate rate eligibility for the portion of the POR prior to Chem China's investment in Pirelli.[14] Thus, in *Qingdao Sentury Tire Co.*, the Court remanded to

---

[9] *Id.* at 1318.
[10] *See Passenger Tires First Remand Redetermination* at 23-29.
[11] *Id.* at 28.
[12] *Id.*
[13] *See Shandong Yongtai Grp. Co. v. United States*, 487 F. Supp. 3d. 1335, 1346 (Ct. Int'l Trade December 21, 2020). The Court then severed the consolidated cases in *Shandong Yongtai Grp. Co. v. United States*, 493 F. Supp. 3d. 1342 (Ct. Int'l Trade January 29, 2021), entering a final judgment for *Shandong Yongtai Grp. Co. v. United States* and ordering that all further proceedings occur under *Qingdao Sentury Co., Ltd. v. United States*, Court No. 18-79.
[14] *See* Pirelli's Comments on Remand Results, ECF 23 (May 7, 2021).

Commerce the issue of whether Pirelli was eligible for separate rate status for the period prior to Chem China's acquisition, January 2015 to October 2015.[15]

Specifically, the Court instructed Commerce to determine whether Pirelli[16] was wholly foreign-owned or located in a market economy prior to the Chem China acquisition; whether a separate rate analysis should be conducted for the period of January 2015 to October 2015; whether the presumption of Chinese government control applies to Pirelli prior to the Chem China acquisition; and, if so, whether there was *de jure* or *de facto* Chinese government control over Pirelli prior to the Chem China acquisition.[17]

Therefore, to acquire the necessary information to comply with the Court's remand order, Commerce issued a questionnaire to Pirelli Tyre Co. on November 1, 2021.[18]  On November 10, 2021, Pirelli Tyre Co. submitted its response.[19]

## III.   LEGAL FRAMEWORK

Pursuant to section 771(18) of the Tariff Act of 1930, as amended (the Act), Commerce has the authority to determine if a country is a nonmarket economy (NME).  In proceedings involving NME countries, such as China, there is a rebuttable presumption that all companies within the country are subject to government control and should be assigned a single, country-wide antidumping duty rate.[20]  A respondent will receive the country-wide rate by default unless it affirmatively demonstrates that it enjoys both *de jure* and *de facto* independence from the government over its export activities.  Commerce will assign a separate rate in NME proceedings

---

[15] *See generally Passenger Tires Third Remand Order*.
[16] The court refers to the consolidated the plaintiffs Pirelli Tyre Co., Pirelli Tyre LLC. and Pirelli Tyre S.p.A. as "Pirelli."  *See Passenger Tires Third Remand Order* at 3.
[17] *See Passenger Tires Third Remand Order* at 12.
[18] *See* Commerce's Letter, "Certain Passenger Vehicle and Light Truck Tires from the People's Republic of China: Supplemental Questionnaire," dated November 1, 2021.
[19] *See* Pirelli's Letter, "Pirelli's Supplemental Questionnaire Response Slip Op. 21-128, Court No. 18-00079, *Qingdao Sentury Tire Co., Ltd. et al. v. United States*," dated November 10, 2021 (Pirelli Supplemental Response).
[20] *See Sigma Corp. v. United States*, 117 F. 3d 1401, 1405 (Fed. Cir. 1997) (*Sigma Corp*).

if a respondent can demonstrate the absence of both *de jure* and *de facto* government control over its export activities under a test established in *Sparklers* as amplified by *Silicon Carbide*, and further refined in *Diamond Sawblades*.[21] The burden of rebutting the presumption of government control rests with the respondent.[22]

The *de jure* criteria are: (1) an absence of restrictive stipulations associated with an individual exporter's business and export licenses; (2) any legislative enactments decentralizing control of companies; and (3) any other formal measures by the government decentralizing control of companies.[23]

The *de facto* criteria are: (1) whether the export prices are set by or are subject to the approval of a government authority; (2) whether the respondent has authority to negotiate and sign contracts and other agreements; (3) whether the respondent has autonomy from the government in making decisions regarding the selection of management; and (4) whether the respondent retains the proceeds of its export sales and makes independent decisions regarding disposition of profits or financing of losses.[24]

IV.   ANALYSIS

Consistent with the Court's remand order, our analysis for purposes of this final determination concerns Pirelli's separate rate eligibility during the period January 27, 2015,

---

[21] *See, e.g.*, *Final Determination of Sales at Less than Fair Value: Sparklers from the People's Republic of China*, 56 FR 20588, 20589 (May 6, 1991) (*Sparklers*); *Notice of Final Determination of Sales at Less Than Fair Value: Silicon Carbide from the People's Republic of China*, 59 FR 22585 (May 2, 1994) (*Silicon Carbide*); and *Diamond Sawblades and Parts Thereof from the People's Republic of China: Preliminary Results of Antidumping Duty Administrative Review; 2011-2012*, 78 FR 77098 (December 20, 2013), and accompanying PDM at 7, unchanged in *Diamond Sawblades and Parts Thereof from the People's Republic of China: Final Results of Antidumping Duty Administrative Review; 2011-2012*, 79 FR 35723 (June 24, 2014), and accompanying IDM at Comment 1.
[22] *See Sigma Corp.*, 117 F. 3d at 1405.
[23] *See Ad Hoc Shrimp Trade Action Comm. v. United States*, 925 F. Supp. 2d 1315, 1320 n.21 (CIT 2013); *see also Sparklers*, 56 FR at 20589.
[24] *See Silicon Carbide*, 59 FR at 22586-87; *see also Notice of Final Determination of Sales at Less Than Fair Value: Furfuryl Alcohol from the People's Republic of China*, 60 FR 22544, 22545 (May 8, 1995).

5

through October 19, 2015.[25]

Information on the record shows that Pirelli Tyre Co., the producer and exporter of subject merchandise, was located in China during the period at issue, January 27, 2015, through October 19, 2015.[26]  As discussed below, information placed on the record by Pirelli Tyre Co. in its supplemental questionnaire response shows that Pirelli Tyre Co. was not wholly foreign owned during the period at issue.[27]  Therefore, Pirelli Tyre Co. is properly subject to a separate rate analysis.  However, Pirelli Tyre LLC is a sales affiliate located in the United States, and Pirelli Tyre S.p.A. was an indirect owner of Pirelli Tyre Co., Ltd. located in Italy.[28]  As such, neither Pirelli Tyre LLC nor Pirelli Tyre S.p.A. were subject to a separate rate analysis by Commerce.

Commerce previously maintained that Pirelli's claim that its ownership structure prior to October 2015 was the same as its ownership structure during the underlying investigation was not supported by the record of the underlying administrative review.[29]  Pirelli disagreed, arguing that it submitted documentation to Commerce showing that from January 27, 2015, through October 19, 2015, Pirelli was an Italian company not under Chinese government control.[30]  Pirelli pointed to a Sales and Purchase and Co-investment Agreement as evidence suggesting that Pirelli was a wholly owned Italian company located in Italy.[31]  We note that the Sales and

---

[25] For the period October 20, 2015, through the end of the POR, Commerce continues to find that Pirelli is not eligible for a separate rate and should be treated as part of the China-wide entity.  *See Passenger Tires First Remand Redetermination* at 23-29.  Because the Court sustained this determination in *Shandong Yongtai Grp. Co.*, and considering the *Passenger Tires Third Remand Order* language directing Commerce to only analyze Pirelli's separate rate eligibility pre-October 20, 2015, we understand the Court to continue to sustain our finding that Pirelli is not eligible for a separate rate for the period October 20, 2015 through the end of the POR.  *See Shandong Yongtai Grp. Co.*, 487 F. Supp. 3d. at 1346; *see also Passenger Tires Third Remand Order* at 13.
[26] *See* Pirelli Supplemental Response at Exhibit 2.
[27] *Id.* at Exhibit 1A and Exhibit 1B.
[28] *Id.* at Exhibit 2.
[29] *See Passenger Tires Third Remand Order* at 8.
[30] *See Passenger Tires Third Remand Order* at 10.
[31] *Id.*

6

Purchase and Co-investment Agreement identifies [          ] as the [          ] of China Chem.  The agreement describes [

].[32]  The agreement does not mention Pirelli Tyre Co., the respondent, much less demonstrate that Pirelli Tyre Co. was a wholly owned Italian Company located in Italy prior to October 2015.  However, information submitted to the record by Pirelli in response to our November 1, 2021 questionnaire demonstrates that there was neither *de jure* nor *de facto* government control of Pirelli Tyre Co. during the relevant POR, as discussed below.

    *De Jure* Government Control Analysis

Information now on the record for the period January 27, 2015, through October 19, 2015, indicates that Pirelli Tyre Co. has no:  (1) restrictive stipulations associated with its exporter's business and export licenses; (2) legislative enactments decentralizing it; or (3) formal measures by the government decentralizing control of it.[33]  Accordingly, based on this record evidence, Commerce determines that Pirelli Tyre Co. rebutted each criterion related to the presumption of *de jure* Chinese-government control for the period January 27, 2015, through October 19, 2015.

    *De Facto* Government Control Analysis

Information now on the record indicates that Pirelli's ownership structure during the POR from January 27, 2015, through August 10, 2015 was materially the same as its ownership structure during the underlying investigation,[34] where Commerce granted Pirelli separate rate status and found that Pirelli rebutted the presumption of *de jure* and *de facto* government control.

---

[32] *See* Pirelli Supplemental Response at Exhibit 6.  As discussed below, Pirelli & C. S.p.A. was an indirect owner of Pirelli Tyre Co.
[33] *See* Pirelli Supplemental Response at Exhibit 2.
[34] *See* Pirelli Supplemental Response at Exhibit 1A; *see also* Pirelli's Letter, "Certain Passenger Vehicle and Light Truck Tires from the People's Republic of China*:  Separate Rate Application Submitted on Behalf of Pirelli Tyre Co., Ltd. (Producer and Exporter from China) and Pirelli Tyre S.p.A. (Exporter to the United States)," dated September 19, 2014.

During the period January 27, 2015, through August 10, 2015, Pirelli Tyre Co. was [

].[35] [

] during the period at issue.[36] [

].[37]  Pirelli & C. S.p.A.'s shares were traded on the Milan Stock exchange throughout the period January 27, 2015, through August 10, 2015.  None of Pirelli' Tyre Co.'s intermediate or ultimate shareholders during the time period January 27, 2015, through August 10, 2015, were Chinese government entities or were supervised by Chinese government entities.[38]

Thus, while the presumption of Chinese government control applies to Pirelli Tyre Co. during the period of January 27, 2015, through August 10, 2015 (*i.e.*, prior to the Chem China acquisition) because of its location in China, there is no information on the record which indicates that any Chinese government entity, including Chem China, had any direct or indirect ownership or control or Pirelli Tyre Co. prior to August 10, 2015.[39]

Moreover, a review of Pirelli Tyre Co.'s AOA, purchase agreements, board of directors meeting minutes and/or resolutions, as well as company financial statements for the period prior to August 11, 2015, show no Chinese government involvement in how Pirelli Tyre Co.: (1) sets export prices;[40] (2) negotiates and signs contracts and other agreements;[41] (3) selects

---

[35] *See* Pirelli Supplemental Response at Exhibit 1A.
[36] *Id.* at Exhibit 1B.
[37] *Id.* at Exhibit 1A.
[38] *Id.* at 5.
[39] *Id.* at 2-9 and Exhibit 1A.
[40] *Id.* at 10-12 and Exhibit 7.
[41] *Id.*

management;[42] (4) retains the proceeds of its export sales and makes decisions regarding disposition of profits or financing of losses.[43]

However, after August 10, 2015, China Chem and the [       ] became indirect owners of the respondent, Pirelli Tyre Co., through an investment in Pirelli & C. S.p.A., and therefore Pirelli Tyre Co.'s ownership structure was no longer the same as its ownership structure during the underlying investigation.[44] Information now on the record indicates that, during the period August 11, 2015, through October 19, 2015, Pirelli Tyre Co. was [

].[45] [



].[46] Information now on the record shows that China Chem and the [       ], entities controlled by the Government of China (GOC), indirectly owned approximately [  ] percent of Pirelli Tyre Co., through their investment in Pirelli & C. S.p.A., during the period August 11, 2015, through October 19, 2015.[47] During this period, China Chem and the [       ] were provided the opportunity to place [   ] members on the board of directors of Pirelli & C. S.p.A.[48] (Pirelli & C. S.p.A.'s board consisted of 15 members).[49] Finally, information now on the record shows that [

] during the period at issue.[50]

However, regardless of this change of ownership, a review of Pirelli Tyre Co.'s AOA,

---

[42] *Id.* at 5, 13-15, and Exhibit 6.
[43] *See* Pirelli Supplemental Response at 15-16, Exhibit 6, and Exhibit 9.
[44] *Id.* at 3, Exhibit 2A and Exhibit 5C (public version).
[45] *Id.* at Exhibit 1B.
[46] *Id.* at Exhibit 1B.
[47] *Id.* at Exhibit 1B.
[48] *Id.* at 6 and Exhibit 5A.
[49] *Id.* at Exhibit 5A.
[50] *Id.* at Exhibit 1B.

purchase agreements, board of directors meeting minutes and/or resolutions, as well as company financial statements for this period[51] shows no Chinese government involvement during this period in how Pirelli Tyre Co.: (1) sets export prices;[52] (2) negotiates and signs contracts and other agreements;[53] (3) selects management;[54] (4) retains the proceeds of its export sales and makes decisions regarding disposition of profits or financing of losses.[55]

Thus, there is no information on the record which indicates that the GOC's minority shareholding in Pirelli & C. S.p.A.[56] or its ability to appoint [     ] of Pirelli & C. S.p.A.'s 15 board members[57] enabled any Chinese government entity to directly or indirectly control Pirelli Tyre Co. during the period of August 11, 2015, through October 19, 2015. Accordingly, we find that Pirelli Tyre Co. has rebutted the presumption of *de jure* or *de facto* Chinese government control for the period of August 11, 2015, through October 19, 2015.

As discussed above, we find that Pirelli Tyre Co. has now rebutted the presumption of *de jure* or *de facto* Chinese government control for the period of January 27, 2015, through October 19, 2015.

## V.    COMMENTS ON DRAFT RESULTS OF REDETERMINATION

*Pirelli's Comments*[58]

- Commerce's Draft Redetermination pursuant to *Passenger Tires Third Remand Order* fully complies with the remand order and is fully supported by the evidentiary record and applicable law.
- Commerce's Draft Redetermination accurately reflects the information submitted by

---

[51] *See* Pirelli Supplemental Response.
[52] *Id.* at 10-12 and Exhibit 7.
[53] *Id.*
[54] *Id.* at 5, 13-15, and Exhibit 6.
[55] *Id.* at 15-16, Exhibit 6 and Exhibit 9.
[56] *Id.* at 3, Exhibit 2A and Exhibit 5C (public version).
[57] *Id.* at 5A and Exhibit 5C.
[58] *See* Pirelli's Letter, "Pirelli's Comments Concerning the Department's Draft Remand Redetermination Pursuant to Court Remand for Slip Op. 21-128, Court No. 18-00079, *Qingdao Sentury Tire Co., Ltd. et al v. United States*," dated November 24, 2021.

- Pirelli and "rendered the correct conclusion"[59] that Pirelli Tyre Co. has rebutted the presumption of *de jure* and *de facto* Chinese government control for the period at issue and is eligible for a separate rate during the period at issue.
- Pirelli agrees with the new applicable antidumping duty assessment rate that Commerce has set forth in the Draft Redetermination for the period at issue.
- Pirelli "strongly supports the adoption of a Final Remand Redetermination in the same terms as the Department's Draft Remand Redetermination."[60]

*Commerce Position:*  We have made no changes for this final remand redetermination.

## VI.   FINAL RESULTS OF REDETERMINATION

In accordance with the *Passenger Tires Third Remand Order*, we have reconsidered and, as discussed above, find that Pirelli Tyre Co. has rebutted the presumption of *de jure* and *de facto* Chinese government control for the period at issue.  As a result, we find that Pirelli Tyre Co. is eligible for a separate rate during the period at issue and will apply the separate rate listed below to entries of subject merchandise produced and exported by Pirelli Tyre Co. during the period January 27, 2015, through October 19, 2015.  Accordingly, the revised weighted average dumping margin for Pirelli Tyre Co. during the period January 27, 2015, through October 19, 2015, for passenger tires from China is listed in the chart below.

| Exporter | *Final Results*: Weighted – Average Dumping Margin (Percent) | Third Final Remand: Weighted – Average Dumping Margin (Percent) |
|---|---|---|
| Pirelli Tyre Co., Ltd. | 76.46 | 1.45[61] |

---

[59] *Id*. at 2.
[60] *Id*. at 3.
[61] *See* Memorandum, "Final Results of Redetermination Pursuant to Second Remand of Certain Passenger Vehicle and Light Truck Tires from the People's Republic of China:  Amended Final Calculation Memorandum for Separate Rate Companies," dated February 26, 2021.

12/3/2021

X _____

Signed by: RYAN MAJERUS

Ryan Majerus
Deputy Assistant Secretary
 for Policy and Negotiations,
 performing the non-exclusive functions and duties of the
 Assistant Secretary for Enforcement and Compliance